# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MONTGOMERY/CRAWFORD, Minors.

UNPUBLISHED
July 13, 2017

No. 336635
Kalamazoo Circuit Court
Family Division
LC No. 2015-000295-NA

Before: SAWYER, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent-mother appeals as of right from the trial court's order terminating her parental rights to the minor children, BMM, JJC, and JRC, based on her voluntary release of those rights. For the reasons stated in this opinion, we conditionally reverse and remand for further proceedings.

In June of 2015, respondent's children were removed from her care. At a pretrial hearing, in August of 2015, respondent entered a plea to allegations in the petition, admitting that she tested positive for various drugs "while being the sole care provider for the minor children." The trial court exercised jurisdiction over the children, and respondent had the opportunity to participate in a case service plan. After more than a year, when respondent had failed to make progress toward reunification, a petition was filed seeking termination of her parental rights. In December of 2016, on the date scheduled for the termination hearing, respondent consented to termination of her parental rights, acknowledging that statutory grounds for termination existed and that termination was in the children's best interests. Based on respondent's voluntary release of rights, the trial court entered an order terminating respondent's parental rights to her children.

On appeal, respondent first argues that the trial court erred in exercising jurisdiction over the minor children based on respondent's plea of admission at the pretrial hearing as to illegal drug use. According to respondent, because the trial court failed to connect her illegal drug use to the care of the minor children, the trial court failed to establish a sufficient basis for jurisdiction. However, respondent's argument, raised in her appeal from the termination of her parental rights, is an impermissible collateral attack on the trial court's exercise of jurisdiction, which we need not consider. "Matters affecting the court's exercise of its jurisdiction may be challenged only on direct appeal of the jurisdictional decision, not by collateral attack in a subsequent appeal of an order terminating parental rights." *In re SLH*, 277 Mich App 662, 668 n 11; 747 NW2d 547 (2008) (citation omitted). Respondent failed to contest the trial court's exercise of jurisdiction after the pretrial hearing and, following a supplemental petition filed over

-1-

a year later, the trial court terminated respondent's parental rights. Because respondent failed to directly appeal the trial court's exercise of jurisdiction, respondent lost her right to raise her jurisdictional challenge.[1] *In re Hatcher*, 443 Mich 426, 444; 505 NW2d 834 (1993).

On appeal, respondent also argues, and the Department of Health and Human Services (DHHS) concedes, that the trial court and DHHS failed to comply with the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, and the Michigan Indian Family Preservation Act (MIFPA), MCL 712B.1 *et seq*. We agree.

The ICWA and MIFPA were enacted in order to protect the best interests of Indian children and promote the stability and security of Indian tribes and families. 25 USC 1902; MCL 712B.5(a); *In re England*, 314 Mich App 245, 250-251; 887 NW2d 10 (2016). Both statutory schemes establish substantive and procedural protections that apply when an Indian child[2] is involved in child protective proceedings. *In re England*, 314 Mich App at 251. However, only an Indian tribe can determine its membership, meaning that, "when there are sufficient indications that the child may be an Indian child," the tribe must be given notice so that the tribe may determine the child's membership status. *In re Morris*, 491 Mich 81, 100; 815 NW2d 62 (2012). In terms of notice, in pertinent part, ICWA states:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary . . . . [25 USC 1912(a).]

---

[1] We note that, even if respondent was not precluded from raising her jurisdictional argument, respondent's argument would fail. At the pretrial hearing, respondent admitted to using amphetamines, methamphetamine, and tetrahydrocannabinol while being the sole care provider for the minor children. This plea provided a factual basis for the court's exercise of jurisdiction over the minor children. See MCL 712A.2(b)(2).

[2] Under ICWA, an Indian child is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 USC 1903(4). MIFPA defines an Indian child as an unmarried person under 18 who is either "[a] member of an Indian tribe," or "[e]ligible for membership in an Indian tribe as determined by that Indian tribe." MCL 712B.3(k).

Our Michigan Supreme Court has held that the trial court has "reason to know" an Indian child is involved when there is "sufficiently reliable information of virtually any criteria on which membership might be based." *In re Morris*, 491 Mich at 108. This includes where "the trial court has information suggesting that the child, a parent of the child, or members of a parent's family are tribal members." *Id.* at 108 n 18.

MIFPA contains a similar notice requirement, which states:

In a child custody proceeding, if the court knows or has reason to know that an Indian child is involved, the petitioner shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending child custody proceeding and of the right to intervene. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the secretary in the same manner described in this subsection. The secretary has 15 days after receipt of notice to provide the requisite notice to the parent or Indian custodian and the tribe. [MCL 712B.9(1).]

As set forth in MIFPA, among other circumstances, there is reason to know an Indian child is involved when the DHHS "has discovered information that suggests that the child is an Indian child," and where "[a]n officer of the court involved in the proceeding has knowledge that the child may be an Indian child." MCL 712B.9(4)(b) and (e).

Under ICWA and MIFPA, when a specific tribe has been identified, the notice requirement cannot be satisfied simply by providing notice to the Secretary of the Interior or the Bureau of Indian Affairs (BIA); rather, notice must be sent to the particular tribe in question. *In re Jones*, 316 Mich App 110, 117-118; __ NW2d __ (2016). In addition, records must be kept to show compliance with the notice provisions. *In re Morris*, 491 Mich at 89, 111-114. "[T]rial courts have a duty to ensure that the record includes, at minimum, (1) the original or a copy of each actual notice personally served or sent via registered mail . . . and (2) the original or a legible copy of the return receipt or other proof of service showing delivery of the notice." *Id.* at 114. Absent such information, it is impossible to discern whether notice was actually sent, to whom it was sent, whether the notice was received, when notice was received, and whether the notice contained "sufficient, accurate information to enable the tribal authorities to determine tribal status of the child and the child's parents." *Id.* at 112-113.

In the present case, the children's maternal great-grandmother indicated at respondent's preliminary hearing that all of the minor children have Indian heritage through the Blackfeet tribe and BMM's father stated that BMM had Cherokee heritage. At a subsequent hearing, the parental grandmother of JJC and JRC indicated that she was one-quarter Passamaquoddy Indian, and she specified that the tribe originated in Maine. These disclosures were sufficient to trigger the notice provisions in both ICWA and MIFPA. See *id.* at 108 n 18, 109; *In re Jones*, 316 Mich App at 116-117.

Based on the various disclosures, the trial court ordered the DHHS to investigate the possibility of the children's Indian heritage, and the DHHS made contact with the BIA as well as several individual tribes. Nevertheless, from the documentation contained in the record, we cannot conclude that the DHHS complied with the ICWA and MIFPA notice requirements. At a

minimum, it appears that the trial court and the DHHS failed in their recordkeeping obligations. In particular, the lower court record is devoid of any documentation to establish that notice was given to either the Passamaquoddy or Blackfeet tribes. Given that these tribes were specifically identified during the proceedings, the DHHS was required to provide these tribes with notice under ICWA and MIFPA, and the failure to do so was error. See *In re Jones*, 316 Mich App at 117-118. Moreover, while it appears that some sort of mailing was sent to three Cherokee entities and that these groups responded to the DHHS's inquiry, the record does not contain a copy of the notice itself.[3] Without a copy of the notice, we cannot determine whether the notice provided "sufficient, accurate information to enable the tribal authorities to determine tribal status of the child and the child's parents." *In re Morris*, 491 Mich at 113. Thus, insofar as there was information to suggest that BMM may have Cherokee heritage, the record is insufficient to allow the determination that the DHHS provided notice as required by ICWA and MIFPA.

When notice has not been provided as required by ICWA and MIFPA, or when the documentary record is insufficient to allow a determination of whether the requisite notice was given, the proper remedy is to conditionally reverse and remand to the trial court for resolution of the notice issue. *Id.* at 115, 122; *In re Jones*, 316 Mich App at 118. Accordingly, we conditionally reverse and remand to the trial court. On remand, the trial court shall follow the remand procedures set forth in *Morris*, 491 Mich at 123.

Conditionally reversed and remanded for resolution of the notice issue. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering

---

[3] With regard to notice under ICWA and MIFPA, the lower court record contains return receipts for registered mail sent to the BIA, the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, the Nottawaseppi Huron Band of Potawatomi Indians, and the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians. The record also contains written responses received from the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, and the Nottawaseppi Huron Band of Potawatomi Indians. However, the record lacks a copy of the actual notice sent by the DHHS. A report in the lower court record, prepared by a caseworker involved with the case, indicates that a copy of the notice can be located "in the family file and MiSACWIS," which appears to refer to "Michigan's Statewide Automated Child Welfare Information System." But, the fact remains that the notice is not contained in the lower court records provided to this Court as needed to enable our appellate review; and, thus, at a minimum, the trial court failed to maintain the requisite documentary record regarding compliance with ICWA and MIFPA. See *In re Morris*, 491 Mich at 89 n 1, 113.

-4-