*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* B.N. TEMPLE, Minor.

UNPUBLISHED
February 13, 2025
3:39 PM

No.  370015
Wayne Circuit Court
Family Division
LC No.  2013-514175-NA

Before:  YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order assuming jurisdiction over the minor child and determining that petitioner established the statutory grounds for termination under MCL 712A.19b(3)(i) (failure to rectify conditions that led to prior terminations) and (j) (reasonable likelihood of harm if child returned to parent).  Because the trial court did not clearly err by determining that the statutory bases for jurisdiction and termination were established, we affirm.

## I.  BACKGROUND

Respondent's daughter, BNT, was born on June 19, 2022.  Child Protective Services (CPS) began its investigation into this matter on the day that BNT was born because respondent's parental rights to BNT's two older siblings were terminated as a result of respondent's untreated mental-health issues.  Respondent was diagnosed with, at a minimum, Bipolar Disorder, Imminent Explosive Disorder, and Borderline Personality Disorder.  Respondent told the CPS investigator on the day of BNT's birth and throughout the duration of the investigation that she no longer required medication to treat her mental illness, preferring instead to self-medicate with "[m]arijuana and God."  At times, however, respondent also gave the impression that she took her prescribed medication.  Respondent agreed to a safety plan, and BNT was placed with a family friend.

BNT was returned to respondent's care because of the delay in obtaining respondent's mental-health records.  Eventually, the CPS investigator received the records and spoke to medical personnel at Central City Integrated Health.  The investigation revealed that respondent failed to comply with her mental-health treatment, including taking her medication, and that the doctor who

-1-

had previously treated respondent had "serious concerns" regarding her ability to parent a child because of her violent behavior. BNT was again placed with a family friend in accordance with the safety plan.

Thereafter, CPS received information that BNT was once more in respondent's care, contrary to the safety plan, and that respondent intended to leave the state of Michigan with the child. CPS was also advised that respondent and BNT's legal father, Careal Deshawn Temple,[1] had been involved in a domestic-violence incident while BNT was in respondent's care and that both respondent and Temple admitted that they regularly smoke marijuana. Petitioner then filed a petition to terminate respondent's parental rights.

Following a combined adjudication and statutory-grounds hearing, the trial court entered an order determining that petitioner had established the statutory bases for jurisdiction and termination. Specifically, the court determined that respondent's untreated mental-health issues and lack of insight into her need for mental-health treatment impede her ability to properly parent BNT, thereby placing the child at risk of harm. Respondent now appeals the trial court's order, challenging the court's determinations pertaining to both jurisdiction and the statutory grounds for termination.[2]

## II. STANDARD OF REVIEW

We review for clear error the trial court's decision to exercise jurisdiction over a child under MCL 712A.2. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). We also review for clear error whether a statutory basis for termination has been met. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Clear error exists when this Court is "left with a definite and firm conviction that a mistake has been made." *In re Leach*, 347 Mich App 26, 30; 14 NW3d 178 (2023).

## III. LEGAL PRINCIPLES

## A. JURISDICTION

In order for a trial court to assume jurisdiction over a child, "the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citation omitted). Only one statutory basis for jurisdiction under MCL 712A.2(b) need be established. *In re SLH*, 277 Mich 662, 669; 747 NW2d 547 (2008). In this case, the trial court

---

[1] Temple became BNT's legal father by signing an affidavit of parentage. It is undisputed, however, that he is not BNT's biological father. Although Temple indicated that he intended to revoke the affidavit of parentage, it is unclear whether that occurred. In any event, this appeal pertains to respondent's parental rights only.

[2] The trial court's order did not address BNT's best interests, and, at the time that the trial court entered the order, a best-interests hearing had not been held. As such, BNT's best interests are not at issue in this appeal.

assumed jurisdiction over BNT under MCL 712A.2(b)(1) and (2), which provide that a court may exercise jurisdiction over a child:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> \* \* \*

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

## B. TERMINATION

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Only a single statutory basis for termination need be established to terminate parental rights. *In re Sanborn*, 337 Mich App at 273. The trial court determined that clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(i) and (j), which provide:

> (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

## IV. DISCUSSION

Respondent argues that she never neglected or abused BNT and that her home was equipped with everything necessary for BNT's care. She also argues that she is able to manage her anger and is very dedicated to BNT. Respondent fails to appreciate that her refusal to comply with her mental-health treatment directly affects her ability to care for BNT. Respondent's parental rights to two of BNT's older siblings were terminated because of her failure to comply with her mental-health treatment, and, at one point, respondent's mental illness led to the appointment of a legal guardian. Despite her lengthy mental-health history, respondent denies that she suffers from Bipolar Disorder. Although she initially gave the CPS investigator the impression that she was taking her prescribed medication, she ultimately admitted that she refuses to take her medication and instead prefers to self-medicate with "Marijuana and God."

The record also demonstrates that respondent is prone to outbursts, including violent outbursts. Respondent's outbursts resulted in her dismissal from an infant mental-health program and the relocation of her visits with BNT from the agency to the 12ᵗʰ Precinct of the Detroit Police Department. Respondent refused to visit BNT at the 12ᵗʰ Precinct for at least two months because she had outstanding warrants and did not want to go there. The warrants were for assaultive offenses. Although respondent maintains that she no longer engages in violent behavior, her history with Temple includes domestic violence, including the incident that occurred when BNT was in respondent's care contrary to the safety plan. Respondent also admitted that she had recently gotten into a physical altercation at the agency with the husband of BNT's foster mother, Simone Temple-Knot. Respondent punched Temple-Knot's husband in the face, and the police were called to the scene. After respondent's visits were moved to the 12ᵗʰ Precinct, she had an outburst there when a visit with BNT did not occur as planned. Respondent yelled profanities and slammed the door. Further, the record shows that respondent has threatened others, including threatening to "shoot up" Temple-Knot's home and physically assault Temple at his place of employment.

Further, the record shows that respondent blames others for BNT's removal from her care. She testified that the CPS investigator is racist and that he and Temple-Knot conspired to take BNT away from her. She also testified that Temple-Knot lied to CPS, tried to sabotage her, and is obsessed with BNT. In addition, she accused others of physically harming BNT, which led to BNT undergoing medical examinations, and accused Temple-Knot's husband of threatening to kill BNT. On one occasion, respondent refused to return BNT to the caseworker following a visit and the police were called to the agency. Respondent admitted that mental-health evaluators had determined that she has behavioral problems and is "a manipulator." Although respondent initially testified that she began receiving mental-health treatment at Lincoln Behavioral Services, she later admitted that was false after petitioner sought to admit records from that agency. Moreover, respondent attempted to manipulate the lower court proceedings by refusing to answer certain questions or stating that she pleads "the Fifth."

Accordingly, the record shows that respondent continues to suffer from untreated mental illness, which led to her previous terminations of parental rights and that, because of her untreated mental-health problems, there exists a reasonable likelihood of harm if BNT is returned to respondent's home. In fact, respondent admitted that she is not "mentally ready for [BNT] to come home." As such, the trial court did not clearly err by finding that the evidence supported the statutory grounds for jurisdiction and termination.

## V. CONCLUSION

The trial court did not clearly err by determining that a preponderance of the evidence supported the statutory bases for jurisdiction under MCL 712A.2(b)(1) and (2) or by determining that clear and convincing evidence supported the termination of respondent's parental rights under MCL 712A.19b(3)(i) and (j). Accordingly, we affirm the trial court's order.

Affirmed.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace