*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JONES, Minors.

UNPUBLISHED
December 12, 2019

No. 348385
Wayne Circuit Court
Family Division
LC No. 15-520555-NA

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his daughters, NAJ and NNJ, under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. GENERAL FACTUAL BACKGROUND[1]

Respondent is the father of twin daughters, NAJ and NNJ, born in 2010. Respondent's relationship with the twins' mother ended approximately a year later. After that, the children remained in their mother's care, but respondent was permitted liberal visitation.

In 2015, respondent lived in a home he shared with two brothers, a sister, and the sister's children. In mid-February 2015, the twins' mother dropped the children off at respondent's home for a visit. After the visit, which lasted several hours, the children returned to their mother's home. That evening, NAJ disclosed to her mother that respondent had inappropriately touched her genital area during their visit. After this disclosure, NAJ's mother took her to the

---

[1] Because, as we will discuss, this case was the subject of two previous appeals, we will not repeat at length the facts underlying the petition for termination. See *In re Jones*, unpublished per curiam opinion of the Court of Appeals, issued November 8, 2016 (Docket No. 332616) (*"Jones I"*); *.In re Jones*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2017 (Docket No. 336836) ("*Jones II*").

hospital for examination, and on February 16, 2015 a complaint was made with Children's Protective Services ("CPS").

On March 23, 2015, Loren Sheiner, a forensic interviewer with Kids Talk, interviewed both NAJ and NNJ.[2] After CPS completed an investigation, petitioner filed a petition seeking termination of respondent's parental rights at the initial disposition. The twins' mother was not a respondent and the children remained in her care.

## B. PRIOR TERMINATION PROCEEDINGS AND APPEALS

A combined adjudicative and dispositional hearing was held on the petition in late 2015. During this combined hearing, video recordings of the children's forensic interviews were admitted into evidence. At the conclusion of the hearing, the trial court found that it had jurisdiction over the children, that statutory grounds for termination had been proved by clear and convincing legally admissible evidence, and that termination of respondent's parental rights was in the children's best interests. On appeal, this Court held that the trial court committed two fundamental errors: (1) not conducting separate adjudicative and dispositional hearings, and (2) basing its findings on legally inadmissible evidence. *In re Jones*, unpublished per curiam opinion of the Court of Appeals, issued November 8, 2016 (Docket No. 332616) ("*Jones I*"). Specifically, this Court held that the trial court erred when it "admit[ed] the recordings of the children's own statements rather than testimony of a person or persons who heard the children make the statements," thus "rely[ing[ on inadmissible evidence to find that it had jurisdiction over the children." *Id.*, unpub op at 2. This Court also noted that by not conducting a separate dispositional hearing, the trial court "appear[ed] to have made its [adjudicative] determination regarding the statutory grounds on the same evidence that was introduced for purposes of trial, and that evidence was not legally admissible." *Id*. Because of these procedural and evidentiary errors, this Court reversed the trial court's order terminating respondent's parental rights and remanded for further proceedings. *Id*.

On remand, during the combined adjudicative and dispositional hearing that followed, the trial court again admitted the children's own recorded statements rather than the testimony of the person who had heard the children make the statements. *In re Jones*, unpublished per curiam opinion of the Court of Appeals, issued August 8, 2017 (Docket No. 336836) ("*Jones II*"). At the conclusion of the combined hearing, the trial court again found grounds to assume jurisdiction of the children, and then found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), and (k)(*ii*). Once again, respondent appealed the trial court's order terminating his parental rights to the children.

In the second appeal, this Court concluded that the trial court had repeated the same errors that compelled this Court to reverse the earlier order of termination. *Jones II*, unpub op at 2. This Court noted that at the time of the combined hearing, "the referee relied on the children's

---

[2] Although this Court stated in *Jones I* and *Jones II* that both NAJ and NNJ accused respondent of sexual abuse, the petition only stated that NAJ had accused respondent of sexual abuse and reported such abuse during her forensic interview. The petition alleged that NNJ required protection from the risk of sexual abuse by respondent.

statements made during their forensic interviews even though the interviews are not admissible for purposes of adjudication, MCL 712A.19b(5), and were not admitted into evidence for purposes of disposition." *Jones II*, unpub op at 2. Accordingly, this Court again reversed the trial court's order terminating respondents' parental rights and remanded for a new hearing before a different referee. *Id*.

## C. PROCEEDINGS AFTER SECOND REMAND

After this Court remanded the matter to the trial court for the second time, the case was reassigned to a different referee. When the combined adjudication and termination hearing began in April 2018, petitioner elected to present NAJ's live testimony, rather than relying on the recordings of the children's prior statements or the testimony of the person who had heard the children make the statements. During the adjudicative phase of the hearing, respondent requested that the video-recording of NAJ's forensic interview be admitted for impeachment purposes. The trial court denied admission of the video-recording, noting that by statute, the recorded interview was not admissible during the adjudicative phase. After the hearing concluded on December 2018, the trial court issued a written order terminating respondent's parental rights. The order stated that the trial court found, by a preponderance of the evidence, that there existed statutory grounds to exercise jurisdiction over the children. In particular, the trial court found credible NAJ's testimony that respondent had touched her in an inappropriate sexual manner. Turning to disposition, the trial court found that there existed clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). Again, the trial court reiterated that it found credible NAJ's testimony that she had been sexually abused and that respondent was the perpetrator of that abuse.[3] Finally, the trial court concluded that termination of respondent's parental rights was in the children's best interests. The trial court entered an order terminating respondent's parental rights.

This appeal followed.

## II. JURISDICTION

Respondent argues that the trial court erred when it assumed jurisdiction over the children. We disagree. This Court reviews a trial court's decision to exercise jurisdiction for clear error in light of the trial court's findings of fact. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). A trial court's findings of fact are "clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 296-297.

---

[3] Although the trial court's order did not explicitly articulate its rationale for assuming jurisdiction over NNJ and terminating respondent's parental rights to her, the statutory grounds found in MCL 712A.19b(3)(b)(*i*), (k)(*ii*), and (k)(*ix*) permit termination if "the child or a sibling of the child has suffered" sexual abuse and there is a risk of harm to the child if returned to the parent. Further, the trial court may take jurisdiction over a child based on a parent's abuse of that child's sibling. See *In re Powers*, 208 Mich App 582, 592-593; 528 NW2d 799 (1995), superseded in part on other grounds by statute in MCL 712A.19b(3)(b)(*i*).

"Child protective proceedings are generally divided into two phases: the adjudicative and the dispositional." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). The adjudicative phase determines whether the trial court may exercise jurisdiction over the children. *Id*. To establish jurisdiction, the petitioner must prove by a preponderance of the evidence that a statutory basis for the trial court's exercise of jurisdiction exists under MCL 712A.2(b). *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). A "preponderance of the evidence" means evidence of a proposition that when weighed against the evidence opposed to the proposition "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

In this case, the petitioner sought jurisdiction under MCL 712A.2(b)(1) and (2), which provide that a court has jurisdiction over a child:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

Respondent does not substantively challenge the trial court's jurisdiction; instead, he argues that the trial court did not identify the statutory grounds or the factual support for exercising jurisdiction. This argument is unsupported by the record. In its oral ruling, the trial court noted that NAJ had testified regarding improper sexual touching by respondent. The trial court further stated that it found NAJ to be credible. Then, in its written order, the trial court stated:

> At the conclusion of the permanent custody trial, the court asserted jurisdiction over the children due to lack of proper care and custody on the part of the father. This was based on father sexually abusing the child NAJ.

While the trial court did not expressly refer to MCL 712A.2(b)(1), it is readily apparent that it relied on this statutory ground for exercising its jurisdiction. Further, the trial court considered and found credible NAJ's testimony regarding the sexual abuse, which formed the factual basis for its exercise of jurisdiction over both NAJ and NNJ. See *In re Powers*, 208 Mich App 582, 592-593; 528 NW2d 799 (1995), superseded in part on other grounds by statute in MCL 712A.19b(3)(b)(i). We find no clear error in the trial court's exercise of jurisdiction. *BZ*, 264 Mich App at 295.

### III. STATUTORY GROUNDS FOR TERMINATION

Respondent also argues that the trial court erred by finding that statutory grounds for termination were established by clear and convincing evidence. We disagree. To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Trejo*, 462

Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*xi*). These statutory provisions permit termination of parental rights under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

* * *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

* * *

(*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.

After reviewing the record, we conclude that the trial court did not clearly err when it terminated respondent's parental rights under the stated grounds.

The trial court found that respondent had sexually abused NAJ. Sexual abuse of a child, at a minimum, would establish a failure to provide proper care and custody, and would support a finding that the child had been exposed to physical and emotional harm. Respondent does not

dispute this conclusion, but instead argues that there was no credible evidence that he sexually abused NAJ. But NAJ testified in detail to respondent's sexual abuse, including that respondent had brought her into a bathroom and touched her genital area, causing pain.

On appeal, respondent asserts that the touching might have been completely innocent, suggesting that he could have been applying medication or helping NAJ wipe. We note that this argument is inconsistent with the position that respondent took at trial, when he asserted that he had never been in a bathroom with NAJ or touched her. There thus is no record evidence in support of respondent's argument. In any event, NAJ also testified that when respondent took her into the bathroom, she did not need to use the facilities and, in fact, she was of an age at which she did not require assistance. This testimony refutes respondent's suggestion that the touching may have been innocent, and instead, supports a finding that it was for a sexual purpose.

NAJ further testified that the sexual abuse occurred in a basement bathroom. She described the basement in detail, and this description was corroborated by her paternal uncle. NAJ's testimony regarding the assault was further bolstered by her mother's testimony that she noted an unusual odor emanating from the child's genital area on the evening the abuse occurred.

Ultimately, the trial court rejected respondent's version of the events and found NAJ to be a more credible witness. Our Supreme Court has long recognized that appellate courts are to give deference to the special ability of the trial court to judge the credibility of the witnesses before it. *In re Miller*, 433 Mich at 337. The trial court had the opportunity to observe NAJ's demeanor and was uniquely situated to determine the weight and credibility to be accorded to her testimony. As to the actual sexual abuse, NAJ's testimony was consistent on both direct and cross-examination. And while she may have been unable to recall some incidental details regarding the day in question, she was able to describe her surroundings and the identity of those present in the house. On this record, we find no basis to disturb the trial court's factual findings that the sexual abuse occurred and that respondent was the perpetrator. *Miller*, 433 Mich at 337.

Further, respondent's sexual abuse of NAJ is relevant and probative to whether NNJ would be at risk of harm if returned to respondent's care. As is often noted, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001). Moreover, despite credible evidence that respondent sexually abused NAJ, respondent has failed to take responsibility for his actions. The lack of insight into the nature of his conduct would place both NAJ and NNJ at risk of harm if returned to respondent's care.

For these reasons, we conclude that the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). *Trejo*, 462 Mich at 355.

## IV. EVIDENTIARY ERRORS

Respondent again raises an evidentiary issue related to NAJ's forensic interview and the adjudication phase of the proceedings, this time arguing that the trial court erred by *not* admitting the recording of the interview for impeachment purposes or allowing NAJ to be impeached with statements from the interview. We disagree. A trial court's decision to admit or exclude

evidence is reviewed for an abuse of discretion. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 629; 853 NW2d 459 (2014). An abuse of discretion occurs when the trial court chooses an outcome outside the range of principled outcomes. *Id*. (citation omitted.) Preliminary questions of law are reviewed de novo. *Id*. at 29-30.

As explained earlier, this Court held in the two prior appeals, *Jones I* and *Jones II*, that the trial court erred by admitting the recordings of the children's forensic interviews rather than testimony of the forensic interviewer. When this matter was tried for a third time, petitioner did not rely on the forensic interviewer's testimony regarding children's statements or the related recordings, instead electing to present the testimony of NAJ herself. Respondent argues, in general, that he was denied the opportunity to impeach NAJ's testimony with prior inconsistent statements she had made during her forensic interview. Respondent also argues that the trial court erred when it excluded the recording of the interview, which respondent claims would have impeached NAJ's trial testimony. After reviewing the record, we find no merit to either argument.

After thoroughly reviewing the record, it is apparent that the trial court never denied respondent the opportunity to attempt to impeach NAJ's testimony with allegedly prior inconsistent statements made during her forensic interview. During the proceedings, respondent repeatedly announced his intention to recall NAJ to cross-examine her regarding alleged prior inconsistent statements. The trial court never forbade him from doing so, although respondent's opportunity to do so was delayed several times by various adjournments. Nonetheless, shortly before counsel for respondent rested his case, he specifically declined the opportunity to recall NAJ, stating that after reviewing the transcripts from the prior proceedings, he no longer wished to elicit testimony from NAJ. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken at trial." *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (quotation marks and citation omitted). In other words, a "[r]espondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute." *In re Hudson*, 294 Mich App 261, 264; 817 NW 2d 115 (2011). On the existing record, there is no support for respondent's claim that the trial court denied him the opportunity to cross-examine NAJ regarding allegedly inconsistent statements she had made during her forensic interview.

The trial court also did not err by excluding the actual video-recording of NAJ's forensic interview, even for impeachment purposes. MCL 712A.17b governs the admissibility of a child's video-recorded statement. MCL 712A.17b(5) specifically provides that a child's video-recorded statement "shall be admitted at all proceedings *except the adjudication stage* instead of the live testimony of the witness." (Emphasis added.) *In re Martin*, 316 Mich App 73, 81; 896 NW2d 452 (2016). Because the matter was in the adjudication phase, the video-recording was not admissible. Accordingly, the trial court did not err or abuse its discretion when it precluded the introduction of inadmissible evidence. *Brown/Kindle/Muhammad*, 305 Mich App at 629.

## V. BEST-INTEREST DETERMINATION

Finally, respondent argues that the trial court erred by finding that termination of his parental rights was in the children's best interests. We disagree. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's

best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error a trial court's best-interest determination. *Trejo*, 462 Mich at 356-357. The trial court's best-interest determination must be supported by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

The trial court may consider several factors when deciding whether termination of parental rights is in a child's best interests, including, but not limited to, the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The trial court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009).

The trial court did not clearly err when it found that termination of respondent's parental rights was in the children's best interests.[4] Respondent argues that the trial court based its determination on the fact that the children were placed with their mother. However, the record reveals that this is not the only factor that the trial court considered. The trial court specifically considered that the children would not be safe in respondent's care because he had sexually abused NAJ. The trial court also considered that NAJ was traumatized by the assault. The evidence established that her grades had dropped, she was exhibiting anger issues, and she was not her typically outgoing self. There was also testimony that NNJ was aware that her sister had been abused and that respondent was the perpetrator. The trial court concluded that termination of respondent's parental rights was necessary to ensure that the children could be protected and have a feeling of security. The trial court's findings are supported by a preponderance of the evidence. *Moss*, 301 Mich App at 83. Accordingly, the trial court did not clearly err when it determined that termination of respondent's parental rights was in the children's best interests. *Trejo*, 462 Mich at 356-357.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

---

[4] We reject respondent's argument that the trial court erred because it failed to cite to MCL 712A.19b(5), the statutory provision under which a trial court considers a child's best interests. Although the court did not expressly cite to MCL 712A.19b(5), it stated on the record, "So for those reasons, the Court is gonna find, by a preponderance of the evidence, it's in the best interests, independently, of [NAJ and NNJ],[that] the parental rights of [respondent] be terminated." The record clearly demonstrates that the court was aware of its statutory obligation to determine the children's best interests and the appropriate standard of proof to apply in determining best interests.